UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HCP SYSTEMS, LLC,                                                                                        Case no. 18-11984-ta7

    Debtor.

*Jointly administered with*,

HEALTH SERVICES, LLC,                                                  Case no. 18-11985-ta7

    Debtor.

YVETTE GONZALES,
Chapter 7 trustee,

    Plaintiff,

v.                                                                                                                        Adv. pro. no. 19-1048-t

HEALTH CARE PARTNERS FOUNDATION,
INC. and RITA TORRES,

    Defendants.

## **OPINION**

Before the Court is defendants' opposed motion for a protective order relating to written discovery requests they received from plaintiff. Specifically, defendants want to delay answering interrogatories until the Court rules on whether plaintiff's counsel has a disqualifying conflict of interest. Defendants also seek an order prohibiting plaintiff's counsel from using the discovery responses in his representation of another client. For the reasons that follow, the motion will be denied, without prejudice to defendants' right to seek relief if circumstances change.

I. FACTS[1]

HCP Systems, LLC ("HCP") filed this chapter 7 case on August 8, 2018. Pre-petition, HCP provided medical services to county jails and other detention facilities. Rita Torres was HCP's managing member, identified on the bankruptcy petition as the "owner/CEO."

Health Services, LLC ("Health Services"), an affiliate of HCP, also filed a chapter 7 case on August 8, 2018. Dr. Melanie Ukanwa is the managing member and president of Health Services. Rita Torres is its CEO.

Yvette Gonzales was appointed chapter 7 trustee in both bankruptcy cases. On August 18, 2018, the Court ordered the cases to be jointly administered.

In October 2018 the trustee filed an application to employ Angelo Artuso as counsel, with the intention of bringing claims against defendants to recover estate property. The trustee chose Mr. Artuso because he had represented Leda Cook in a state court lawsuit against Ms. Torres, HCP, and Health Services (the "State Court Action").[2] The trustee believed Mr. Artuso's familiarity with the facts of the dispute was a substantial benefit.

The Trustee's application to employ Mr. Artuso drew a number of objections. The objectors argued that Mr. Artuso's representation of Ms. Cook in the State Court Action created a conflict of interest. Finding that the prohibitions in § 327(a) and (c)[3] did not disqualify Mr. Artuso from employment, and deferring to the Trustee's judgment in her choice of counsel, the Court

---

[1] The Court took judicial notice of the docket in the main case and this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).
[2] *Leda Cook v. Health Services, et al.*, no. D-202-CV-2016-03921, pending in the Second Judicial District Court, State of New Mexico.
[3] Statutory references are to Chapter 11 of the United States Code unless otherwise indicated.

-2-
Case 19-01048-t    Doc 39    Filed 05/07/20    Entered 05/07/20 09:57:02 Page 2 of 10

overruled the objections. On February 25, 2019, the Court entered an order approving the Trustee's application to employ Mr. Artuso under § 327(a).

The trustee filed this adversary proceeding on May 14, 2019, asserting a number of "strong-arm" avoidance powers and state law claims against defendants. Mr. Artuso is the trustee's counsel. Defendants timely answered the complaint and the Court entered a scheduling order.

The parties agreed to a lengthy, well-drafted confidentiality and protective order, which was entered on October 24, 2019 (the "Confidentiality Order"). The Confidentiality Order gives the parties broad discretion to identify documents as "confidential" or "confidential-attorney's eyes only." The Confidentiality Order restricts the use and disclosure of confidential documents. By the terms of the Confidentiality Order, confidential documents may not be used in any other litigation (like the State Court Action) or disclosed to nonparties (e.g. Ms. Cook).

On January 22, 2020, Ms. Cook (through Mr. Artuso) filed a motion in the main case for relief from the automatic stay or a declaration that the stay does not apply. The purpose of the motion was to allow Ms. Cook to proceed against Ms. Torres in the State Court Action. Ms. Torres, HCP, and a number of other parties-in-interest objected to the stay relief motion on the grounds that the motion caused Mr. Artuso to have a conflict of interest continuing to represent both Ms. Cook and the trustee.

The trustee served interrogatories on defendant Health Care Partners Foundation, Inc. ("Foundation") on January 23, 2020. In response, defendants filed a motion for protective order, asking for an extension of time for the Foundation to respond to the interrogatories until the Court ruled on Mr. Artuso's alleged conflict of interest. The motion also asked the Court to enter an order that any information supplied by the interrogatory responses not be used by Ms. Cook in the State Court Action.

The Court held a hearing on the stay motion on March 12, 2020, and took the conflict of interest issue under advisement.

On March 24, 2020, before the Court had ruled on the conflict issue, Ms. Cook withdrew her stay motion. The trustee asserts that the withdrawal moots the conflict of interest argument, and that defendants' motion for protective order therefore should be denied.

## II. DISCUSSION

A. <u>Representing an Interest Adverse to the Estate</u>.

When the trustee applied to retain Mr. Artuso in October 2018, the objectors argued that Mr. Artuso represented an interest adverse to the estate (a creditor, Ms. Cook), contrary to § 327(a). The Court reviewed the facts and concluded that Ms. Cook's status as a creditor did not create a disqualifying conflict of interest under § 327(a) and (c). The Court ruled that the trustee could retain Mr. Artuso to bring the avoidance claims against defendants.

Now, the focus has shifted from Ms. Cook's status as a creditor to her status as a competitor of the estate to collect money from Ms. Torres. The potential conflict is that both the estate and Ms. Cook, if successful in their claims against Ms. Torres, might "race to the courthouse" to collect judgments from a pool of assets too small to pay both.

Section 327(a) provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, *that do not hold or represent an interest adverse to the estate*, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(emphasis added). As discussed in the Court's earlier ruling on the trustee's application to retain Mr. Artuso, there is no question that Mr. Artuso is a "disinterested person,"[4] so the only issue

---

[4] See the definition in § 101(14).

raised by the stay motion is whether Ms. Cook's claims against Ms. Torres mean that Ms. Cook is adverse to the estate.

B.   Did Withdrawal of the Stay Motion Moot the Issue?

Because she withdrew her stay motion, it does not appear that Ms. Cook intends to proceed against Ms. Torres at this time. So long as Ms. Cook is willing to "sit on the sidelines" while the estate pursues its claims against Ms. Torres, the Court does not believe there is a disqualifying conflict of interest in Mr. Artuso's representation of both Ms. Cook and the estate.[5] *See* 3 Collier on Bankruptcy, § 327.04[7][a] (finding an actual conflict requires "[s]omething more than the mere fact of dual representation").

If Ms. Cook decides to pursue her claims against Ms. Torres, however, a disqualifying conflict of interest could arise that would have to be addressed. *See, e.g., In re Arochem Corp.*, 181 B.R. 693, 703 (Bankr. D. Conn. 1995) (discussing the conflict of interest of a estate and another party competing for recovery of claims against a third party); *Kittay v. Kornstein*, 230 F.3d 531, 538 (2d Cir. 2000) (citing *Aerochem* and discussing how a "pooling agreement" resolved a potential conflict of interest about collection of competing judgments against the same third party).[6]

The New Mexico Rules of Professional Conduct are relevant to this inquiry. Rule 16-107 provides:

---

[5] The stay motion likely sought a "comfort order" from the Court, as it appears reasonably clear that the automatic stay does not apply to Ms. Cook's claims against Ms. Torres. There is no co-debtor stay in chapter 7. *Cf.* § 1301(a). Ms. Cook alleged that the state court judge did not want to proceed without an order from this Court that proceeding would not violate the automatic stay.

[6] *See generally Kuemmerle v. United N.M. Bank at Roswell*, N.A., 831 P.2d 976, 978 (N.M. 1992) (New Mexico follows the common law "first in time, first in right" rule governing the priority of liens); *In re Weise*, 455 B.R. 702 (Bankr. E.D. Wis. 2011) (rule of priority of judgment liens is first in time, first in right); *In re Hubler Rentals, Inc.*, 1979 WL 1465, at *2 (E.D. Pa. ) (same).

> A. <u>Representation Involving Concurrent Conflict of Interest</u>. Except as provided in Paragraph B of this rule, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> B. <u>Permissible Representation When Concurrent Conflict Exists</u>. Notwithstanding the existence of a concurrent conflict of interest under Paragraph A of this rule, a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

Under this rule, Mr. Artuso presumably has obtained Ms. Cook's written consent to his representation of the estate in its claims against Ms. Torres. The orders and opinions issued by the Court in the main case and this adversary proceeding constitute the necessary written consent from the estate.

If Ms. Torres is not wealthy enough to pay both the estate and Ms. Cook in full in the event both creditors get judgments against her, it is hard to see how representing both in active litigation would not present a conflict of interest. In such an event, Ms. Cook might have to retain new counsel, Mr. Artuso might have to withdraw from representing the estate, or Ms. Cook and the estate might have to enter into a "pooling agreement," approved by the Court after notice and a hearing.[7] Should this eventuality arise, defendants are free to renew their objection to Mr. Artuso's continued representation of the estate. Until then, however, the Court holds that no disqualifying

---

[7] Races to the courthouse are a common theme in insolvency law, as are lawyers representing multiple creditors against a single debtor. It therefore would not be unusual that a pooling agreement could be negotiated, pursuant to which the parties agree how to apportion assets available to pay creditors.

conflict exists. To the extent the alleged conflict of interest was the basis for the protective order defendants seek, the request must be denied.

C. The Foundation's Motion for a Protective Order Must Also be Denied on Procedural Grounds.

The scope of permissible discovery generally is very broad. Subject to certain considerations, Fed. R. Civ. P. ("Rule") 26(b)(1)[8] allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Since "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable," *id.,* "extensive intrusion into the affairs of both litigants and third parties" may be had. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984).

Of course, the right to discovery is not unlimited; the rules provide a number of discovery-related protections, including the availability of protective orders under Rule 26(c). In relevant part, Rule 26(c)(1) provides:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. *The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.* The court may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

(emphasis added). The Foundation's motion does not comply with Rule 26(c)(1).

1. The Motion Does Not Have the Required Certification. Rule 26(c)(1) requires a party seeking a protective order to certify "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *See*

---

[8] Rule 26) is made applicable to this proceeding by Fed. R. Bankr. P ("Bankruptcy Rule") 7026.

*also Quarrie v. N.M. Inst. of Mining & Tech.*, 2014 WL 11456600 (D.N.M.) (quoting the rule); *Duke v. Sanchez*, 2013 WL 12329158, at *2 (D.N.M.) (same). The rule requires the moving party to "describe with particularity the steps taken by all attorneys to resolve the issues in dispute." *Montoya v. Loya Ins. Co.*, 2019 WL 7596289, at *1. (D.N.M.). The motion must show that the movant made a good faith effort to "converse, confer, compare views, consult and deliberate" with the opposing party. *Id.*; *see also American Mech. Solutions, LLC v. Northland Process Piping, Inc.*, 2015 WL 11004498, at *2 (D.N.M.) (to the same effect).

The Foundation's motion does not include any certification. Moreover, it appears from the briefing that the parties did not make any effort to confer, consult, and consider ways to resolve the discovery dispute without court intervention. Because the motion lacks the required certification, is should be denied.

2. <u>The Motion Does Not Satisfy the Good Cause Requirement</u>. Rule 26(c)(1) allows the Court to enter a protective order "for good cause." The good cause requirement "puts the burden on the party seeking relief to show some plainly adequate reason" for a protective order. Wright & Miller, *Federal Practice and Procedure*, § 2035. "To demonstrate good cause, the party seeking the protective order must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005), quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981). The moving party "must present concrete reasons justifying a protective order and not rest on unverified fears." *Pia v. Supernova Media, Inc.*, 275 F.R.D. 559, 560 (D. Utah 2011).

In support of its motion for a protective order, the Foundation argues that Mr. Artuso is "conflating" this adversary proceeding with the State Court Action. As evidence of the alleged conflation, the Foundation attached to its motion a September 16, 2019, email from Mr. Artuso to

a Dave Metler. In the email Mr. Artuso mentions the State Court Action, apparently as a way of jogging Mr. Metler's memory, before asking Mr. Metler if he would be interesting in acting as an expert witness for the trustee. The Court is not persuaded the email shows Mr. Artuso is conflating the State Court Action and this proceeding.[9] There is nothing improper about hiring an expert who is familiar with the case. Mr. Artuso's knowledge of the dispute was one of the reasons the trustee wanted to hire Mr. Artuso. She may have wanted to retain Mr. Melter for the same reason.

The defendants' overriding concern is that, notwithstanding the Confidentiality Order, Mr. Artuso might use information obtained in this proceeding to Ms. Cook's advantage in the State Court Action. The Foundation complains that Mr. Artuso might give Ms. Cook "access" to sensitive and confidential information acquired in this proceeding, which Ms. Cook might then use for "improper purposes." Defendants further allege that Mr. Artuso "is treating the [State Court Action] and this adversary proceeding as one and the same and that he may be inclined to use the information he gathers on behalf of the Trustee for Ms. Cook's benefit." Other than one questionable sentence in an email, however, there is no evidence that Mr. Artuso has violated or ever would violate, the Confidentiality Order. The Foundation's fear that Mr. Artuso "may be inclined" to do so is not "good cause" to issue a new protective order.

Further, the Confidentiality Order prohibits Mr. Artuso from taking the very actions the Foundation seeks to avoid. If Mr. Artuso would violate the Confidentiality Order, as defendants apparently fear, there is no reason to think he would abide by a new protective order. Again,

---

[9] Mr. Artuso says in his email, referring to the State Court Action, that "the case is now pending in U.S. Bankruptcy Court." That is not accurate. Based on the record before the Court, the statement appears to be defendants' sole basis for arguing that Mr. Artuso is improperly conflating the two actions and might misuse documents or information produced in this proceeding in the State Court Proceeding. While Mr. Artuso's language is unfortunate, the Court finds that his explanation (Mr. Artuso was trying to give Mr. Melter a general sense of why he was being contacted) is persuasive.

however, there is no evidence whatsoever that Mr. Artuso will not comply with the Confidentiality Order or his ethical and professional duties.

C.  The Foundation's Objections to the Relevance of Certain Interrogatories Are Not Properly Before the Court.

Finally, the Foundation invites the Court to consider relevancy objections to certain of the trustee's interrogatories, if the Court "so wishes." The Court will only rule on discovery objections if the dispute is properly raised under the Rules. *See, e.g.,* Rules 33(b)(4), 34(b)(2)(C), and 36(a)(5). If an objection is lodged on relevance grounds, the parties must then confer and try to work it out. If the effort fails, then the party seeking discovery must file a motion to compel under Rule 37, with the proper certification. Rule 37(a)(1). Only then would the Court rule on the dispute, likely awarding attorney fees to the prevailing party. Rule 37(a)(5). None of this has yet happened. The Foundation's invitation therefore will be declined.

III.  CONCLUSION

Defendants' motion for a protective order will be denied by separate order, without prejudice, however, to the defendants' right to seek to disqualify Mr. Artuso if Ms. Cook changes course and decides to pursue her claims against Ms. Torres before this proceeding has been completed.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 7, 2020
Copies to: Counsel of Record